The East Tennessee, Virginia & Georgia Railroad Company *v.* J. T. Massengill.

Negligence. A conductor agreeing to put a passenger off at a station is bound to stop the train at that place, so that the passenger can get off in safety, even though his ticket is only to the last station passed before reaching it, additional fare being receivable if demanded, but the mere agreement and duty to stop, and the ringing of the bell by the conductor is not sufficient ground and inducement by the conductor to induce the passenger to believe that the train had stopped. When the train fails to stop at the station of destination of a passenger, and he is not directed or induced at the time by act or word of the company's agent to get off, and he does get off, he does so at his own risk.

FROM SULLIVAN.

Appeal in error from the Circuit Court of Sullivan county. Newton Hacker, J.

W. M. BAXTER and W. D. HAYNES for Railroad Company.

C. J. ST. JOHN and THOMAS CURTAIN for Massengill.

FREEMAN, J., delivered the opinion of the court.

The plaintiff sues the defendant because, as alleged in his declaration, the company having agreed, in consideration of fare paid, "to carry plaintiff on its road to his home at Union depot," and there stop its train and allow plaintiff to descend from same in safety, which said agreement was not kept," but by its carelessness, negligence and failure to perform its duties the plaintiff was, at or near Union depot, violently thrown to the ground, and greatly injured, etc.

Defendant pleads not guilty, and a special plea "that the injuries received were caused by the careless and negligent conduct of the plaintiff in attempting to get off defendant's train while said train was in motion."

On these issues the case went to a jury, who, under the instructions of the court, gave a verdict of $7,000 in favor of plaintiff, from the judgment on which an appeal in error is prosecuted to this court. The Referees have reported in favor of an affirmance of the judgment, to which defendant files seven exceptions, opening all the questions in the case.

A short statement of facts will present such questions as we deem necessary to consider in the disposition of the case.

Plaintiff had obtained a ticket at Dalton, Georgia, purchasing a ticket to Johnson City, his home at Union depot being beyond that. At Johnson City, plaintiff, who was unknown to the conductor, Charles Toms, said to him his ticket was out there, and asked him if he could stop and put him off at Union depot. The conductor told him he was behind time, and could not do so, but sold him a ticket to Bristol, beyond his home, telling him he could go on to that point and take the western bound train, coming back to Union, and get home sooner than from Johnson City, to which plaintiff agreed. However, at a station five miles from Union depot, the conductor came to plaintiff, and told him he had made up his lost time, and would stop for him to get off at Union depot, at the same time paying back the difference between the fare to Bristol and Union. So plaintiff rode on under this contract that he was to get off at Union, his home. It is proper to add, the night train on which plaintiff was traveling did not, as per its schedule, stop at Union depot.

The train reached Union depot about four o'clock, February, 1883. On approaching Union depot, the conductor rang the bell, as plaintiff says, several hundred yards from the depot. "When the train got near, as I thought, I went to the rear of the car; I discerned what I thought to be the depot; when I came to the platform I thought the train *was in the act* of stopping, not perfectly still; when the train came up I discerned the depot; the stopping place is right near the depot, sometimes beyond it; I

thought when I stepped off the train had stopped about five steps east of the depot. The place I aimed to get off is the usual place of getting off; when the train reached this place I thought it was perfectly still, and stepped off." In doing so, the train being in fact in motion, he was thrown to the ground and severely injured. We have given the above quotation from the testimony of plaintiff himself, who may be assumed to have given the case no unfavorable coloring against himself at least. He adds, in conclusion of his testimony, "at the time I stepped off the train I thought it had stopped; I was not calculating it was still running," and that the conductor did not assist him off.

On cross examination, he says he "could see the depot, as he was coming out and walking on the steps" to get out, "and the train was in motion; I knew it was in motion as it passed the depot, but thought it had stopped as I stepped off on the ground." He "stepped off about five steps only after the train passed the depot."

Several objections are urged against the charge of his Honor, the circuit judge, among others that it is so vague, general and abstract as to have misled the jury, and this is assigned as reversible error.

The charge is subject to the criticism of being too elaborate, too much in the way of general discussion of several questions, not the vital ones, by any means, in the case. But we have repeatedly said, we cannot undertake to revise the mere form or errors of taste, as we might think, in the inferior

courts.   We must see an affirmative error of law
by which a jury might reasonably have been misled.

On the main question, however, on which the case
turned, and which by the declaration was the gravamen
of the suit, that is, of culpable negligence on the
part of defendant in not stopping its train, as agreed,
at Union depot, so that plaintiff could safely descend
the steps and get off, it is insisted there is palpable
error.

His Honor, after charging that if the conductor had
agreed to put plaintiff off at Union, had taken his fare to
this place, he was bound to do so, and that he was bound
to do so at the usual place, etc., says: " And if the con-
ductor led the plaintiff to believe he would stop at the
usual place for taking and letting off passengers, and if
plaintiff, laboring under such belief, prepared himself
to get off at such point, and if, being so induced by
the said conductor, he honestly and in good faith be-
lieved that said train had stopped at the accustomed
place for taking and letting off passengers, when in
fact it had not, and if plaintiff, while the train was
in motion, but in *good faith believed* it had stopped,
stepped off, and was thrown forward by the motion
of the train and injured, then the railroad would be
liable."   He adds this qualification to the above:  "But
if the evidence should show that the said train, on
reaching the depot or accustomed place of stopping,
was simply checking up in order to stop, but had
not stopped, then if plaintiff, knowing this, jumped off
such train while the same was moving, of his own
accord, and was thrown forward and injured, then

plaintiff could not recover." He then adds: " If plaintiff, at the time he was injured, was not in the exercise of ordinary care, he cannot recover."

The court was correct as to the introductory proposition, that if the conductor, receiving the fare to Union depot, had agreed to stop at that point, he was bound to do so. "A conductor, agreeing to put a passenger off at a place not a regular station, is bound to stop the train at that place, so that the passenger can get off in safety, even though his ticket is only to the last station passed before reaching it, additional fare being receivable, if demanded: Wait's Act. & Def., vol. 5, page 312; *Western Railroad Company* v. *Young*, 57 Ga., 489.

But the theory of the main proposition cited above is clearly erroneous as applied to the facts of this case, and the issues on which his Honor was called on to instruct the jury, when he said to the jury, after stating the conductor was bound to stop, as agreed, "and if the conductor led the plaintiff to believe that he would stop at the usual place for letting off passengers, and if plaintiff, laboring under such impression, prepared to get off," etc., could only have been understood by the jury as laying down the rule that the mere agreement and duty to stop and ringing bell was sufficient ground and inducement by the conductor to authorize plaintiff to honestly believe that the train had stopped, and so the company was liable for thus having misled him to his injury. The facts clearly show that there was no other ground on which the conductor could have been assumed to have

misled plaintiff, except having agreed to stop, and having rung the bell in good faith, no doubt, to carry out that agreement on nearing the depot.

The opposite of this would be the law. The mere fact that the company had agreed to stop the car at the depot would furnish no basis on which a passenger could assume necessarily, or as a matter of fact, that the train had stopped, when in fact it was in motion, and had been seen to be in motion only a few seconds before as it passed the depot, only about five steps from where the plaintiff claims was the stopping place, nor render the company liable, because the passenger *bona fide* believed it had stopped. In order to have made the company liable on this theory the agent of the company must have, by specific acts or conduct, directed to the fact that the train had stopped, misled the plaintiff, whereby he was injured by being thus misled by the company's agent, as for instance as he stood on the platform ready to descend the steps, or on the steps ready to step on the ground, the conductor had directed him to get off, that the train had stopped, and he relying on this, with reasonable caution, attempted to get off and was injured, the injury would be the result of the conduct of the company's agent, and it is liable for damages. But this is not the idea that is fairly to be gathered from his Honor's charge. " The general rule," says Judge Thompson in his work on Carriers of Passengers, page 267, " that a party is not entitled to leap off the train when the company fails to give sufficient time for getting off, and a party doing so·

merely to avoid the inconvenience of being carried by the point of his destination, cannot recover for injuries resulting from such act." There are found certain just exceptions to this rule as given by the author, but nothing that would sustain the judgment in this case.

In fact, the whole theory of this part of the charge is, that as the train should have been stopped for plaintiff to get off near the depot, and plaintiff in good faith believed it had, when it had not, the company would be liable. This would be to hold the company liable for the plaintiff's mistake, and not for any wrong done by it. It could only be held, as we have said, for the wrong of the agent in influencing, by specific act or word, the precise step by which the plaintiff was injured in a case like the one presented in this record. This is not relieved by the qualifying part of the charge requiring knowledge on the part of plaintiff when he jumped off, that the train was in motion, and jumping off of his own accord.

As he was not directed to get off when he did, and did it of his own accord at that time, while the train was in motion, it was his duty to have exercised diligence to secure his own safety, and if without being misled to the step at the time by a specific direction or act of the defendant's agent, he stepped off when the train was in motion, he took the risk of the act, and must bear the consequences. The general subsequent statement that the plaintiff must show he was in the exercise of ordinary care,

Railroad Company v. McKnight.

·or else he could not recover, does not relieve the
·charge from the objections we have stated. This con-
veys no very definite instruction to guide the jury,
but at most in connection with the main, charge, that
in following his *bona fide* belief, and in getting off
while the train was in motion, the plaintiff must have
·done so with proper care. ,Whether he got off care-
lessly or carefully could make no difference, if he was
not directed or induced at that time to get off by
·act or word of defendant's agent, misleading him to the
step, he would still be doing so on his own motion
and at his own risk.

Without discussing other questions presented in argu-
ment, for the error indicated the judgment will be
·reversed. and the case remanded for a new trial.