# TENNESSEE RAILROAD CO. v. J. C. KINGSLEY.

Eastern Section.   June 15, 1929.

Petition for Certiorari denied by Supreme Court, October 19, 1929.

638

John M. Davis, of Wartburg, Chas. H. Davis, of Oneida, and Fowler & Fowler, of Knoxville, for plaintiff in error.

Howard H. Baker, W. H. Buttram, Jr. and H. K. Pemberton, all of Huntsville, for defendant in error.

SNODGRASS, J. This is an action for personal injuries, alleged to have been sustained by defendant in error in attempting to alight from a train of the plaintiff in error while same was in motion.

The declaration avers that the defendant in error had paid his cash fare from Norma, Tenn., to River Junction, Tenn.; that it had been accepted by the company, who agreed safely to convey the plaintiff from Norma, Tenn., to River Junction, Tenn., a station on the line of the defendant's railway, and alleged to be about two and one-half miles from Huntsville, the county seat of Scott county; that when said passenger train of the defendant company which was carrying plaintiff as a passenger for hire reached the said station on its lines, to-wit, River Junction, Tenn., the conductor, who was in charge of the train of defendant company, and who was its agent, and who was in complete control of said train, told plaintiff to get off here, that it was his station, River Junction; that plaintiff got ready to get off the train as instructed, and that the said conductor thereupon told him the train could not come to a complete stop, because of the heavy grade just beyond the station, but instructed the plaintiff to get off the train, and that it would be all right; that plaintiff and other passengers obeyed the instruction of the said conductor of defendant company and stepped off said passenger train; that in attempting to get off said passenger train as aforesaid plaintiff was thrown from the train and down the fill by the force of the fall and the jerk of the defendant's locomotive and

train, and was knocked unconscious; that the back of his head and body received an extremely severe blow from the fall; that the plaintiff got off the train relying on the assurance of the defendant company, through its agent, the conductor aforesaid, that this course was perfectly safe; that in said fall plaintiff was severely injured in the back of his head; that his spine was permanently injured, and that he was severely and permanently injured in the back, head and legs; that as a direct and proximate result of said injuries plaintiff's eyesight has become seriously and permanently impaired and his nervous system shattered, and they were alleged as permanent; from which it was also alleged he has suffered great physical pain and mental anguish, and has been continuously, and was then, wholly unable to perform any gainful work and had been compelled to expend a large sum of money, and was doing so at the time for medical attention; wherefore he sued for the sum of $10,000 as damages.

Upon a plea of not guilty the case went to trial before the judge and jury, after a refused application made for a continuance by the defendant, and resulted in a verdict and judgment in favor of the plaintiff in the sum of $10,000.

Its motion for a new trial being overruled the defendant appealed and, as plaintiff in error, has made fifteen assignments.

The first and second of these assignments are overruled, because the court, having submitted the case to the jury, could not and should not have interfered with the return of their verdict, howsoever erroneous this verdict might appear to be. Nor, considering plaintiff's evidence, do we think he was in error in submitting the case to the jury as claimed in the third assignment, as under the plaintiff's theory of the case there was abundant evidence to sustain the verdict.

Plaintiff in error quotes a part of the charge in the fourth assignment and insists that it is error, because under the instruction, it is claimed, any degree of negligence of the plaintiff, although proximately contributing to his injury, would not bar a recovery, and negligence of the defendant, though not proximately causing the injury, would authorize a recovery.

We do not think the charge is justly subject to this criticism, for the reason that, while the excerpt quoted standing alone was too broad, the paragraphs following limited and applied it in a way to eliminate the particular criticism, though they introduced another objection complained of in the fifth assignment. As limiting the extent of the paragraph complained of the court stated:

"The defendant, however, was not an insurer of the plaintiff's safety, and he can only recover from it in case you find

that he was injured through the defendant's negligence and wrongfully (wrongful?) acts as heretofore stated.

"If the plaintiff voluntarily stepped off the train of his own accord without instructions of the conductor as to when and how to get off, and as a result of this he was injured, then he can not recover.

"If you find that the prime and proximate cause of this injury was the result of the negligence of plaintiff, then he cannot recover, or if his acts in getting off the train were negligent, and if the acts of the company were also negligent, this would be called contributory negligence on the part of the plaintiff, and he could not recover.

"Unless you should find that his acts were only in a small degree negligent, then and in that event he would be entitled to recover, but the judgment would be reduced according to the degree of his negligence."

We think, notwithstanding the paragraphing and punctuation, these paragraphs were plainly meant as a limitation and application of the paragraph complained of in the fourth assignment, but taken together it is amenable to the criticism complained of in the fifth assignment, because, as claimed, even though it may not involve the doctrine of comparative negligence, that is not in vogue in this State, the jury were authorized to return a verdict for the plaintiff even though his negligence may have been proximate, though slight, whereas in this kind of a case proximate contributory negligence bars a recovery, however slight.

Evidently the question was confused with the liability for injuries in consequence of a violation of statutory requirements relating to operation of trains, or possibly the court meant to use the word "remote" in place of the word "small." At any rate if it served or was calculated to mislead the jury, and can be construed as affecting their verdict, it would be reversible error. Does it appear that it can? The jury were told that in the event of even small negligence upon the part of the plaintiff the judgment would be reduced. Plaintiff sued for $10,000, and they gave him the full amount. We think this is tantamount, therefore, to finding that the plaintiff was not guilty of any negligence, proximate or remote, and would render the instruction inapplicable and, therefore, harmless, unless there was evidence to show that plaintiff was guilty of some negligence, and we think there is none.

The train was moving slowly and plaintiff was being carried by his nearest station to Huntsville, where he had been summoned to attend court on that day. He was thus confronted with the alternative of a violation of the subpoena or further inconvenience, and we think was authorized under the circumstances to alight without

being regarded as negligent, unless conditions were such that an ordinarily prudent man would not have undertaken it, and there is no proof we think from which the jury were authorized to conclude that such were the conditions. Railroad v. Mitchell, 98 Tenn., 27, 40 S. W., 72.

When considered in connection with the facts of this case we do not think there is any reversible error in the charge complained of in the sixth, seventh and eighth assignments. Certainly if the conductor accepted cash fare to transport the plaintiff from Norma to River Junction, it would amount to a waiver of any rule or custom to not stop at River Junction, and whether it was a mixed train or not, if it accepted and carried passengers, it would be a passenger train within the meaning of the law. We think, if the proof showed anything in relation to custom, it was that it did stop when tickets were sold to a station. It was not denied, but was admitted that the fare was paid by the plaintiff to this station, but it was insisted that all the parties were notified the train would not stop there, and that this notification became a part of the contract and prevented any waiver of the obligation to stop. But it was not insisted that the plaintiff was specially apprised of this fact, but only that he was in the crowd when the notification was made. Defendant in error denies that he was so informed, and states that if any such statement was made he did not hear it. Insofar therefore as the plaintiff was concerned the company was not relieved of the obligation to stop and afford him a reasonable time to get off. There was therefore no proof calling for the request submitted as set out in the ninth assignment, which according to other facts appears both inaccurate and ironical. It was not denied but what the company received the fare and agreed to convey the plaintiff somewhere, and even to the station claimed. It might be inferred from its own proof that, even if they were not to stop, they were to slow down sufficiently to enable him to alight with a chance of safety. It would therefore have been improper to have told the jury that if he alighted while the train was in motion and was injured, it was no fault of the company and plaintiff would not be entitled to recover.

The tenth assignment is not well taken, for even if the defendant in error knew that the train did not ordinarily stop at River Junction, it would not necessarily follow that they could not waive this custom by accepting a fare to River Junction. The custom was not like the laws of the Medes and Persians, unalterable, as appeared indeed from the evidence. The acceptance of a cash fare to transport him to a place where they did not ordinarily stop would amount to an agreement to stop, and what he knew or might have known of their custom therefore would be immaterial. In these circumstances it would appear that to prevent the consummation of such a contract

it would have been necessary for said railroad company to have specifically notified him that the train would only slow down and let him take the risk of removing himself, or decline to take his fare, which without such modification certainly committed the company to the obligation of stopping, or at least to some obligation. Having admitted the reception of the cash fare from Norma to River Junction, it implied at least some obligation short of stopping, and it would have been error to have told the jury that if he got off at River Junction without compulsion from the defendant or its employees, then the plaintiff would not be entitled to recover. So the court was not in error in declining the request set out in the eleventh specification.

The request set out in the twelfth assignment was substantially covered by the court in his general charge, but as there was no negligence shown in alighting from the car the court could not be put in error in declining to give it in charge, because it was uncalled for.

There was no reversible error in the refusal to continue, as insisted upon in the fourteenth assignment. No sort of diligence was shown to place the witness under any obligation to attend, and the defendant was not therefore in any attitude to insist upon a continuance for the witness. To reverse the case upon this ground would be to reward the negligence which appears in the failure to procure and have executed a subpoena for this witness earlier, or at a time when there was some hope of having it executed before the trial. No excuse was offered for the delay.

The court, however, has found more difficulty in disposing of the thirteenth and fifteenth assignments. The first complains that the recovery is so excessive as to show prejudice, passion, corruption or caprice on the part of the jury, and the latter that the court erred in not granting a new trial upon the newly discovered evidence brought forward on the application for a new trial in the affidavits filed supporting it, which are set out in the record, chiefly the affidavit of Dr. Tom R. Barry, of Knoxville, Tenn., who it appears received his medical education at Vanderbilt University and is a practicing physician of some eight years experience. This affidavit was taken on the 13th day of March, 1928, and states that within the last month he had attended the said J. C. Kingsley professionally at the Knoxville General Hospital. and that the said J. C. Kingsley has locomotor ataxia, the result of syphilitic infection; that the diagnosis was arrived at by examination of the spinal fluid, which was positive, and also by characteristic symptoms of this disease; that locomotor ataxia is never caused by any disease except syphilis; that he (Kingsley) during the course of his treatment by him, stated something about having received an injury, but laid no particular stress upon it; that he treated Kingsley for the above disease and

not for physical injury; that he had not given this information to any lawyer in the case until that day, when H. G. Fowler called upon him.

The affidavit of S. F. Fowler was offered, in which it appears that neither the defendant nor its attorneys knew prior to the trial theretofore that J. C. Kingsley was afflicted with locomotor ataxia and had a syphilitic disease; nor was it known to defendant or its attorneys prior to the trial that the plaintiff had taken treatment in Knox county, Tenn., and not until plaintiff testified that he had received treatment at the Knoxville General Hospital; that thereupon an immediate investigation was made and it was discovered that Dr. Tom R. Barry of Knoxville attended the plaintiff after his alleged injury, and that Dr. Barry's statements as to plaintiff's condition and ailments was substantially contained in his affidavit presented herewith.

It is insisted by the defendant in error that the application should have been then made for a continuance, but at that stage it would not have been efficacious, but would rather have partaken of the nature of speculation as to what the Doctor might say. Plaintiff has been treated by other physicians, at least by D. T. Chambers, who was examined, and it was insisted that if the defendant had exercised due diligence or had taken advantage of the offer made by plaintiff at the hearing, *the said doctor could have made a thorough physical examination of the plaintiff.* This is not apparent when it is remembered that, while the Knoxville physician stated he had other symptoms, the real condition of the plaintiff was made manifest by an examination of the spinal fluid, which it appears had enabled the Knoxville physician to verify his opinion, and which character of verification would hardly have been afforded in the facilities that were available at the time and place of trial. Besides, from testimony of the physician who was examined, it appears that plaintiff was not in the best of health at any time, and it was reluctantly admitted by him that it was possible for the injury to have been responsible for plaintiff's present condition, which apparently was very bad. And it was made effective by the personal exhibition that was made of him during the trial, and which the tenor of his own testimony attributed wholly to the injury.

We have no doubt but what his condition at the time of the trial was largely, even mainly attributable to the syphilitic affliction spoken of by the doctor, which he says resulted in locomotor ataxia. At least this proof should have been before the jury, and we are not satisfied upon the facts and circumstances of this case to affirm this large verdict upon any strained construction that the defendant was not diligent in having the evidence before the court.

644

The result is, therefore, that the judgment of the lower court is reversed and the case remanded for a new trial, at the cost of the defendant in error.

Portrum and Thompson, JJ., concur.