PASCHALL *v.* SOUTHERN RY. CO.

(*Nashville*, December Term, 1947.)

Opinion filed January 16, 1948.

Rehearing denied February 28, 1948.

A. M. Griffin, Jr., and Wm. C. Sugg, both of Nashville, for plaintiff in error.

Ferriss C. Bailey, of Nashville, for defendant in error.

Mr. Justice Tomlinson delivered the opinion of the Court.

These consolidated cases are predicated upon the same facts. The controlling law is applicable to both cases. What is said in the case of the minor, Mary Frances Paschall, applies to the case of her mother, Bessie Mai Paschall.

This is an appeal from the judgment of the Circuit Court, sustaining a demurrer to the declaration of plaintiff in error, suing by next friend, to recover damages from defendant in error, Railway Company, for personal injuries caused by alighting from a passenger train while it was moving.

Plaintiff in error was 13 years old at the time of this accident. She was put on the train at Washington, D. C. by a representative of the Travelers' Aid Society for transportation as a pay passenger in a day coach to Chattanooga, Tennessee. At that time this representative informed those in charge of the train that this girl was unescorted, inexperienced in traveling and would need their assistance in alighting from the train at Chattanooga. When the train arrived at its passenger station in Chattanooga the next afternoon and stopped for the

discharge of passengers she was asleep. When she failed to get off with the other disembarking passengers, a representative of the Travelers' Aid Society, who had gone to the Chattanooga station to meet her, informed those in charge of the train that this girl was still on the train. Notwithstanding this information, those in charge of the train began to move it in a switching operation.

About this time some through passenger in the coach awoke plaintiff in error and informed her that the train had arrived at its Chattanooga station. Thereupon, she went promptly to the exit door of the car and saw that the steps were down for use of passengers getting off, but no one was there to assist her, so she went through the next car to its exit door and found the same situation. Thereupon, she walked down these steps and stepped to the ground while the train was moving at a speed of from three to five miles per hour, with the result that she was thrown down and sustained a broken leg.

While it is insisted on behalf of the railroad company that the facts stated do not constitute any negligence upon its part, but further, assuming the negligence of the railroad company, there can be no recovery because the act which brought about the injury, to wit, the conduct of this girl in alighting from a moving train in order to avoid being taken away from her place of destination, was an act which no reasonable man would expect to occur and one, therefore, which could not have been foreseen nor reasonably anticipated as a probable result of the railroad's negligence. Defendant in error, in support of this latter insistence, cites a number of cases in which the passenger did exactly that in order to avoid the result which this girl was seeking to avoid. The trial judge took that view of the matter and sustained the demurrer so insisting.

*East Tennessee V. & G. R. Co.* v. *Massengill*, 83 Tenn., 328 and *Nashville, C. & St. L. Ry.* v. *Harrell*, 21 Tenn. App., 353, 110 S. W. (2d) 1032, 1038 are the Tennessee cases relied on by the railroad company as authority for its insistence that the railroad company is not liable when it appears that the injury was received as a result of her act in getting off the train while it was moving. Both cases are clearly distinguishable from the instant case on the proposition now being considered.

This Court does say in the *Massengill case* that if the passenger "was not directed or induced at that time to get off by act or word of defendant's agent, misleading him to the step, he would be doing so on his own motion and at his own risk". However, in that case the railroad was guilty of no negligence. While its train was in process of stopping, but while it was moving, the passenger stepped off under the belief that the train had come to a stop. The railroad did nothing to induce the belief. The Court, therefore, said: "This would be to hold the company liable for the plaintiff's mistake, and not for any wrong done by it. It could only be held . . . for the wrong of the agent in influencing by specific act or word, the precise step by which the plaintiff was injured". In the case at bar the specific act which influenced this girl to alight from the moving train was the act of its operators in starting the train to move after it had stopped to discharge passengers and before this girl, a passenger, had been discharged. We shall hereafter consider the question of whether that was a wrongful act upon the part of the agent of the railroad.

In the *Harrell case supra*, the train was traveling at a speed of from 25 to 35 miles per hour when an intelligent and bright boy nine years old jumped off, when the train did not stop, as was the custom, to let him off at his home.

Though the home coming desire is an instinct so strong in a normal nine year old child that, in the exercise of ordinary care, it might reasonably be anticipated that such child, in order to avoid being taken away from that home, would step off a train moving between three and five miles per hour, it could not be anticipated that such child would undertake so hazardous an act, and appearing so, as to jump from a train traveling between 25 and 35 miles per hour, in order to avoid being carried away from his home. In that case the Court said that if the passenger does get off while the train is moving at a *rapid rate* of speed, "he does so at his own risk". The emphasis is ours.

We think the instant case is controlled on the proposition being discussed by the rule as stated in *Tennessee R. R. Co.* v. *Kingsley*, 10 Tenn. App., 637. The result reached in that case could not have obtained if the rule applicable was not as stated. Thus, this Court in denying *certiorari* approved that rule as well as the result. In that case, *Tennessee R. R. Co.* v. *Kingsley, supra,* 10 Tenn. App. at pages 640, 641, it was said: "The train was moving slowly and plaintiff was being carried by his nearest station to Huntsville where he had been summoned to attend Court on that day. He was thus confronted with the alternative of a violation of the subpoena or further inconvenience, and we think was authorized under the circumstances to alight without being regarded as negligent, unless conditions were such that an ordinarily prudent man would not have undertaken it and there is no proof we think from which the jury were authorized to conclude that such were the conditions."

So, in the instant case, reasonable minds might differ as to whether this 13 year old girl under all the circumstances was guilty of negligence in attempting to

get off this train while it was moving at a speed of from three to five miles per hour. That is a jury question. There is no question but 'that she was induced to get off the train at this time by the act of the operators of the train in putting it in motion after it had stopped to discharge passengers, and before she had alighted. It must, therefore next be determined whether this was an actionable wrong upon the part of the agents of the railroad.

It is alleged in the declaration that this train after it stopped in the Chattanooga station to discharge passengers, ''but before the interval of time afforded passengers for alighting from said train had expired'' was again put in motion, thereby inducing her to believe that this train with her on it was about to depart Chattanooga, that being her point of destination. Moreover, those in charge of the train knew that this 13 year old girl was on that train, and that she was to get off at Chattanooga. These agents had actually been informed before they put the train in motion again that this child had not alighted from that train. So, the rule applicable to the case at bar is that stated by this Court in *Railroad* v. *Mitchell*, 98 Tenn. 27, 31, 32, in this language: ''As railroad companies usually carry not merely the vigorous and active, but also those who from age or extreme youth are slower in their movements than vigorous and active persons, the time of stopping is not to be measured by the time in which the latter may make their exit from the train, but by the time the other class may, using diligence, but without hurry or confusion, alight. Those in charge of the train are bound to presume that there may be such persons in the cars, and, unless they know there are not, they have no right to start the train until they have waited long enough to allow such passengers to alight, nor, even after waiting a reasonable time for such persons to get

off, have they a right to start the train without using reasonable care to ascertain if there are such persons in the act of getting off. It certainly would not be permissible for them to be so reckless of the lives or limbs of passengers as to start the train when they know, or with reasonable care might know, that the passengers were in the act of alighting.''

█ In the instant case the agents of plaintiff in error were informed before they put the train in motion that this girl had not alighted with the other passengers, and that it was her intention to get off there. Therefore, under the rule just stated they were guilty of an affirmative wrong equivalent to a misfeasance in putting that train in motion before ascertaining that this 13 year old girl had gotten off. This wrong induced that girl to undertake to get off while the train was slowly moving. We conclude that the declaration stated a case for jury determination. We must, therefore, reverse the judgment holding to the contrary, and remand for trial in accordance with these conclusions. Defendant in error will pay all costs of the appeal.

All concur.

### On Petition to Rehear.

It is suggested in the Railway Company's petition to rehear that we were mistaken when in our opinion heretofore rendered we stated that ''these agents had actually been informed before they put the train in motion again that this child had not alighted from that train.'' That allegation of the declaration upon which we based our above quoted statement is as follows:

''That *upon arrival* of the defendant's said train in its terminal at Chattanooga, Tenn., a representative of the Travelers' Aid Society in Chattanooga, Tenn., was pre-

sent to meet plaintiff and when plaintiff did not *immediately* alight from said train in its terminal, said representative of said Travelers' Aid Society at Chattanooga, Tenn., informed said agents and servants of the defendant in charge of said train as to plaintiff's presence thereon and inquired as to why plaintiff had not alighted from the train." (Emphasis ours.)

We think the above quoted allegation, when given a normal construction, states what we in our opinion said. Applicable to this construction is the following observation of this Court:

"It must be borne in mind that (1) we are dealing with a demurrer, which admits all allegations of the pleading and is subject to the general rule that demurrers are not favored and will be overruled if, by any fair and reasonable intendment, the pleading challenged states, however, inartificially, a good case." *Byrd* v. *Pioneer-Jellico Coal Co. et al.*, 180 Tenn. 396, 399, 175 S. W. (2d) 542, 543.

We do not, however, think the allegation quoted is inartificially stated.

Petitioner in seeking to bring this case within the ruling of *Nashville, C. & St. L. Ry.* v. *Harrell*, 21 Tenn. App. 353, 110 S. W. (2d) 1032, urges upon us the proposition that the rapid rate of speed with which the train was moving when young Harrell attempted to alight was not a controlling factor in the conclusion reached in that case. The petition to rehear says that the Court "was merely describing the facts and conditions of that case when it was stated that the train was moving at a rapid rate of speed . . . that . . . whether it be moving slow or fast . . . the passenger leaves the train at his own risk," unless directed to do so by those in charge of the train. We are unable to so interpret that case, nor

do we think that the Court in the *Harrell case* could have intended to hold as petitioner here insists, unless it had the further intention of overruling *Tennessee R. R. Co.* v. *Kingsley,* 10 Tenn. App. 637. The case indicates no such intention. Its necessary implication is, in our opinion, to the contrary.

In the *Kingsley case* the Court said: *"The train was moving slowly* and plaintiff was being carried by his nearest station to Huntsville, where he had been summoned to attend Court on that day. He was thus confronted with the alternative of a violation of the subpoena or further inconvenience, and we think was authorized under the circumstances to alight without being regarded as negligent, unless conditions were such that an ordinarily prudent man would not have undertaken it." (10 Tenn. App. at page 640) (Emphasis ours.) We are, of course, aware that in the *Kingsley case* the plaintiff was told by the conductor "that it would be all right" to get off this slowly moving train. The case, however, as will be observed from the above quotation therefrom, did not turn upon that point, since the Court stated that conditions were not such "that an ordinarily prudent man would not have undertaken it.

Turning now to *Nashville, C. & St. L.* v. *Harrell, supra,* it is to be observed that the Court emphasized the fact that the train was running fast when the young Harrell jumped off. The Court calls attention to the fact that the boy testified "that when he jumped off *he knew the train was running fast".* (21 Tenn. App. at page 357, 110 S. W. (2d) at page 1035.) Then the Court held that if "he does get off *while the train is moving at a rapid rate of speed,* he does so at his own risk." (21 Tenn. App. at page 362, 110 S. W. (2d) at page 1037) (Emphasis ours.) In the light of this language we are un-

able to find any basis for the insistence that the rapid speed of the train was not one of the controlling factors in concluding that the railway company was not liable in that case. There would have been no point in calling attention to the testimony of the boy that "he knew the train was running fast" when he jumped off. Further, if the rule is that the passenger always steps off at his own risk whether the train "be moving slow or fast" as insisted by petitioner, then there was no reason for the Court to have stated in the *Harrell case*, as it did, that the passenger steps off at his own risk "while the train is moving at a rapid rate of speed."

■ The petition to rehear asserts that "there is no allegation in the declaration in this case indicating that plaintiff was induced or directed to leave the train by act or word of the defendant's agent." It was noted in our original opinion and in this opinion that those in charge of the train started it after being informed that this little girl had not alighted. The starting of the train was an act of the defendant's agent. The declaration alleges that as a result of this act plaintiff "became . . . greatly fearful that she would be carried beyond her destination and proceeded to alight."

■ It is also insisted that the act of the railroad inducing a passenger to undertake to alight will not render it liable unless that act is "simultaneous with the passenger's departure from the train." As to the principle applicable, it was held to the contrary in the *Kingsley case*. There the Court held: "Having admitted the reception of the cash fare from Norma to River Junction, it implied at least some obligation short of stopping, and it would have been error to have told the jury that if he got off at River Junction without compulsion from the defendant or its employees, then the plaintiff would not

be entitled to recover.'' (10 Tenn. App. at page 642.)

■ Finally, the petition to rehear asserts that it could not have reasonably been anticipated that the act of the defendant in starting its train before this girl got off would induce her to undertake to alight therefrom while it was moving at from three to five miles per hour in order to avoid being carried beyond her destination. With sincere deference to counsel and to the strong petition which has been filed, we think this insistence is quite untenable in the light of the present day fact that there are many reported cases in many jurisdictions which resulted from the fact that a passenger undertook to do exactly what this little girl undertook to do in order to avoid the exact result which she was seeking to avoid. Probably counsel, in making this insistence, fails to draw the distinction between a rapidly moving train, on the one hand, as in the *Harrell case,* and one that is moving from three to five miles per hour, as in the *Kingsley case,* and in the case at bar. The passenger's desire to avoid being carried beyond his or her destination is, we would say, a natural desire, common to all, and the temptation to alight from a train moving at from three to five miles per hour in order to avoid the result stated naturally follows, and this, we think, is a commonly known fact.

We cannot escape the conclusion that the particular facts of this case brings it within *Tennessee R. R. Co.* v. *Kingsley, supra.* So, the petition to rehear is denied.

All concur.